HUNTER et al. v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department.   May 17, 1912.)

EMINENT DOMAIN (§ 149*)—LIENS—SPECIAL ASSESSMENT.

Laws 1893, c. 644, provided for the creation of improvements in streets in Long Island City, the cost to be originally paid with general improvement bonds and assessed on the property benefited in twenty equal annual installments, each of the installments to be a lien on the property assessed only from the time they are, respectively, levied. *Held* that, where at the time property was condemned for public use it was subject to an assessment imposed under such act and all the annual assessments prior to the time title vested in the city were paid by the owner, he was not subject to a deduction of the balance of the assessment, neither levied nor accrued, from the damages awarded for the taking of the property.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 327–331, 401; Dec. Dig. § 149.*]

Submission of controversy between J. Bennett Hunter and others and the City of New York on agreed statement of facts.   Judgment for plaintiffs.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, CARR, and WOODWARD, JJ.

A. T. Payne, of Long Island City, for plaintiffs.

Francis J. Byrne, of New York City (Theodore Connoly, of New York City, on the brief), for defendant.

BURR, J.  This controversy is submitted upon an agreed statement of facts.

Prior to February 1, 1907, plaintiffs were the owners of certain lands situated in that portion of the city of New York which was formerly within the boundaries of Long Island City.  Proceedings had been taken by defendant to acquire the same for public use, and on the date mentioned the report of the commissioners of appraisal was filed.  This report was confirmed by the Supreme Court on November 10, 1909, and plaintiffs were awarded damages to the amount of $11,250, with interest from February 1, 1907, which was the date when title vested in the city.  Payment was demanded, but was refused unless plaintiffs should suffer to be deducted from said award the amount of a claim made by the city arising out of a public improvement previously made, and affecting the land in question. Thereupon plaintiffs deposited with the Comptroller a certified check for the sum of $755.32, to be held by him until the respective claims of the parties thereto should be determined.  This action is instituted for that purpose.

The public improvement out of which defendant's claim arises was made under and in accordance with the provisions of an act, entitled "An act to create a general improvement commission and provide for certain improvements in the highways, streets, avenues, boulevards and public places in Long Island City."  Laws of 1893, c. 644.  By that act a commission was appointed, which commission, or a majority

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the members thereof, had power upon the conditions therein prescribed to institute proceedings for certain specified improvements, and to advertise for proposals and make contracts for any part of the work under their charge. For the purpose of paying the expenses thus incurred, the mayor and common council of Long Island City were authorized to issue, upon the requisition of the committee, bonds to be known as "general improvement bonds." The act further provided that the expense of any improvement made thereunder should be assessed upon the land benefited thereby, and it contained this further provision:

"When each of said improvements shall have been completed, and as each one thereof is completed, the said general improvement commission shall deliver to the board of assessors of said city and the city treasurer and receiver, each of which shall be public records and at all times open to inspection, duplicate certificates wherein it shall be set forth, as nearly as can be stated, the amount of the entire cost of each improvement, together with duplicate maps and statements showing the location and general character of the improvements made, and the said board of assessors shall thereupon give public notice in the official papers, notifying all persons affected that the said assessment certificate and maps are completed and on file and that a hearing will be given to all persons feeling themselves aggrieved, said hearing of which there shall be not less than four, shall take place after said notice shall have been published for three weeks. If it shall be made to appear to said assessors that any injustice has been in the assessment made upon any parcel or parcels of land affected thereby, they shall correct the same as justice may require. After the said assessments shall have been corrected and the certificate, maps and statements filed with the city treasurer shall have been corrected, the said assessors shall divide the assessment or amount imposed upon any lot or parcel of land into twenty equal parts or annual installments, and in each year thereafter, for twenty years, shall assess an amount equal to one of said annual installments, with interest, upon the lots or parcels of land benefited by said improvement; and in making said assessments, regard shall be had only to the area and benefit received, and not to the value of any lot or parcel of land so assessed. Each one of the said several annual installments assessed as aforesaid in each year shall be a lien upon the lots or parcels of land affected thereby only from the time the same shall be respectively levied, and the same shall be collected in the manner provided for the collection of taxes in said city."

The improvement in question was completed and the entire cost thereof determined prior to December 17, 1903. This amount was divided into 20 equal parts, and one of such parts was on the 31st day of December, 1903, assessed, levied, and made a lien upon plaintiffs' lands. Similar proceedings were had in the years 1904, 1905, and 1906, and each of these installments plaintiffs duly paid. Similar proceedings were also had in the years 1907, 1908, and 1909, although before the time when either of such proceedings was taken the title to the land had vested in defendant. Neither of these installments has been paid. It seems clear that the amounts of those installments of the cost of the improvement above referred to which might have been assessed upon the land in question subsequently to February 1, 1907, and thereafter become payable if title had not at that time vested in the city, were not completed assessments, and were not technically liens upon said land. Laws of 1893, c. 694; Lathers v. Keogh, 109 N. Y. 583, 17 N. E. 131; Real Estate Corporation v. Harper, 174 N. Y. 123, 66 N. E. 660; Buckhout v. City of New York, 176 N. Y.

363, 68 N. E. 659; Matter of Hagemeyer, 113 App. Div. 472, 99 N. Y. Supp. 369. But defendant contends that it would be inequitable to compel defendant, which has advanced the funds necessary to pay for the improvement of the land taken, to be obliged to forego reimbursement for the amount of the deferred unpaid installments, and this upon the ground that it must be presumed that the value of said land was enhanced by the cost of such improvements, and that plaintiffs have received such enhanced value. See Dowdney v. Mayor, 54 N. Y. 186; De Peyster v. Murphy, 66 N. Y. 622. The difficulty with this contention is that it rests upon a premise which is not shown to exist. Acquiring property by condemnation in a legal sense is a purchase and sale of the land, or of the interest authorized to be taken. Vandermulen v. Vandermulen, 108 N. Y. 195, 15 N. E. 383. If two individuals were bargaining for the land on the 1st of February, 1907, each of whom knew that seventeen-twentieths of the cost of the public improvement had not been paid, but would become due and payable in the future, the vendee would not offer as the price of the land its value without the improvement plus the entire cost thereof, but only the original value plus so much of said cost as had been already paid. The vendor could not expect to receive a greater sum. In the absence of evidence to the contrary, it must be presumed that under the circumstances here disclosed, as both parties knew the facts, the city condemning and the plaintiffs yielding up their land in obedience to the exercise of the power of eminent domain presented evidence of these facts to the commissioners, and that in making their award they considered that the present value of the land was less than it would have been if the entire cost of the improvement had been paid. There is a distinction between the value of land as affected by a public improvement for which an assessment has not been laid and land affected by a general tax. The former is presumed to add to the value of the land; the latter is not. We think, therefore, that the statement in Buckhout v. City of New York, supra, that commissioners of estimate could not be presumed under the circumstances there disclosed, and in consideration of the statute there referred to, to have taken into consideration the amount of a general tax, has no application here.

There should be judgment for the plaintiffs for the return of the certified check deposited by them, or, in default thereof, for a sum of money equal thereto; but, under the terms of the stipulation herein, such judgment should be without costs. All concur.