(173 App. Div. 797)

CRUGER v. UNION TRUST CO. OF NEW YORK.

(Supreme Court, Appellate Division, First Department. July 10, 1916.)

1. TRUSTS ⊜⇒59(1)—REVOCATION OF TRUSTS IN PERSONAL PROPERTY—STATUTE RETROACTIVE.
Personal Property Law (Consol. Laws, c. 41) § 23, providing for the revocation of trusts in personal property or any part thereof upon the written consent of all persons beneficially interested, is retroactive, and confers power to revoke trusts created before its enactment.
[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 78, 79; Dec. Dig. ⊜⇒59(1).]

2. TRUSTS ⊜⇒59(1)—REVOCATION—TRUSTS OF PERSONAL PROPERTY.
Personal Property Law, § 23, providing for the revocation of trusts upon the written contract of all persons beneficially interested, applies only to personal property, not to real property.
[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 78, 79; Dec. Dig. ⊜⇒59(1).]

3. TRUSTS ⊜⇒59(1)—REVOCATION—REAL AND PERSONAL PROPERTY.
Where a trust consists of both real and personal property, it may, under Personal Property Law, § 23, be revoked as to the personal property, or any part thereof with the written consent of all persons beneficially interested, notwithstanding the trust provision that interest and taxes are directed to be paid from the entire income.
[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 78, 79; Dec. Dig. ⊜⇒59(1).]

4. TRUSTS ⊜⇒59(1)—REVOCATION—CONSENT OF PERSONS BENEFICIALLY INTERESTED.
Where a trust consists of both real and personal property, and provides that the income is payable to the creator during his life, and upon

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

his death the principal and all unexpended income is to be conveyed to his heirs, as may be directed by his will, or as provided by law in the absence of such will, the creator was the only person beneficially interested, whose consent to the revocation of the trust as to personal property was necessary, under Personal Property Law, § 23.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 78, 79; Dec. Dig. ☞59(1).]

5. TRUSTS ☞59(1)—REVOCATION—PERSONS BENEFICIALLY INTERESTED—POSSIBLE DEVISEES OR HEIRS.

The right to revoke a trust as to personal property, under Personal Property Law, § 23. does not require the consent of relatives of the creator of such trust, whose only interest is that they may possibly become heirs or devisees, since they are not beneficially interested.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 78, 79; Dec. Dig. ☞59(1).]

6. TRUSTS ☞59(1)—REVOCATION AS TO PERSONAL PROPERTY—PROCEEDS FROM CONDEMNATION OF REAL ESTATE.

An award of money received by a trustee as the proceeds of condemnation proceedings, whereby real property was taken, was personal property, as to which the trust may be revoked, under Personal Property Law, § 23.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 78, 79; Dec. Dig. ☞59(1).]

Submission of controversy upon agreed facts, under Code Civ. Proc. §§ 1279–1281, between Bertram De N. Cruger and the Union Trust Company of New York. Judgment directed for plaintiff.

Argued before CLARKE, P. J., and McLAUGHLIN, SCOTT, SMITH, and PAGE, JJ.

Henry G. Gray, of New York City, for plaintiff.
William G. Barr, of New York City, for defendant.

McLAUGHLIN, J. This is a submission under the Code of Civil Procedure (sections 1279–1281). It appears from the submission that the defendant is a substituted trustee under a trust created by the plaintiff, which the latter has attempted to revoke as to the personal property, under section 23 of the Personal Property Law, and that the defendant has refused to recognize the revocation until certain questions arising in connection therewith have been judicially passed upon. These questions are (a) whether the trust has been or can be legally revoked; and (b) if it has been, whether the revocation applies to an award made by the city of New York in condemnation proceedings for an interest in a pier formerly held by the trustee under the deed of trust. The trust was created in 1904, when the plaintiff conveyed and transferred certain real and personal property to one Spedden, the original trustee. A trust indenture was executed at the same time, under which Spedden was to hold the property in trust, with power of sale and reinvestment, and, after paying the expenses and charges upon the real estate, to pay over the income to the plaintiff during his life, and upon his death—

"to assign, transfer, pay over, and convey the principal of the said trust fund, together with all accrued and unexpended income therefrom, to such persons in such shares and proportions as of such estates and upon such terms and conditions as the said party of the first part [plaintiff] may by his last will

and testament direct or appoint, and in default of such direction or appointment, then to such persons in such shares and proportions respectively as they would have been entitled to receive under the laws of New York relating to the distribution of decedents' estates and the descent of real property in case the said party of the first part had died intestate seised and possessed of the corpus of the said trust fund as then constituted."

The trustee was further authorized, under certain conditions, to make payments to the plaintiff from the corpus of the fund. Spedden subsequently resigned as trustee, and the defendant was duly appointed substituted trustee in his place.

[1] The section of the Personal Property Law referred to, which was enacted in 1909, provides as follows:

*"Revocation of Trusts upon Consent of All Persons Interested.* Upon the written consent of all the persons beneficially interested in a trust in personal property, or any part thereof, heretofore or hereafter created, the creator of such trust may revoke the same as to the whole or such part thereof, and thereupon the estate of the trustee shall cease in the whole or such part thereof."

This statute, notwithstanding the fact that it was not enacted until after the trust was created, is applicable, since by its terms it is retroactive and confers power to revoke trusts theretofore created. Hoskin v. Long Island Loan & Trust Co., 139 App. Div. 258, 123 N. Y. Supp. 994, affirmed on opinion below 203 N. Y. 588, 96 N. E. 1116; Sperry v. Farmers' Loan & Trust Co., 154 App. Div. 447, 139 N. Y. Supp. 192.

[2] It applies, however, only to trusts in personal property. The corpus of the trust in question has always consisted of both real and personal property, and it is urged that the statute, for that reason, does not apply, and especially in view of the provision in the trust indenture directing the taxes and other charges upon the real estate to be paid from the general income of the trust fund. There is force in this contention, but it seems to me it has been determined adversely to the defendant so far as this court is concerned, by the decision in Sperry v. Farmers' Loan & Trust Co., supra. In that case the plaintiff had executed a trust deed of all the property, "real and personal, to her bequeathed and devised" by a decedent. At that time her interest in the decedent's estate consisted almost entirely of realty. The executors, however, sold the realty under a power of sale, and the corpus of the fund turned over to the trustees under the trust deed was in cash. The trustees subsequently invested a portion of the fund in realty, which they held at the time the plaintiff attempted to revoke the trust. She sought to revoke it only as to a portion of the personalty, and this court held she was entitled to do so under the statute.

[3] Upon that point, therefore, that case is on all fours with the case at bar. The fact that interest and taxes are directed to be paid from the entire income, I think, in no way changes the situation. Notwithstanding that fact, the trust remained as a trust of personal property as well as real estate. In both cases the trust fund consisted of both real and personal property at the time the trust was created and at the time its partial revocation was attempted. In the Sperry Case, it is true, the property when actually received by the trustees was in

the form of personal property; but, on the other hand, almost all the personalty which they were directed to deliver pursuant to the revocation represented the proceeds derived from the sale of real estate. In the present case, except for the award in the condemnation proceedings, all the personalty which the trustees were asked to surrender was either the identical property originally turned over to the trustee, or other personalty substituted for it. Under the decision in the Sperry Case, therefore, the trust in question could undoubtedly be revoked as to the personalty by the consent of all the persons beneficially interested therein, and it remains to be considered whether their consent were obtained.

[4] On March 8, 1916, the plaintiff served upon the defendant a notice of the revocation of the trust in so far as it affected personal property, in which Spedden, the former trustee, joined. He also, at the same time, presented consents to the revocation executed by his mother, brother, and sister, who would have been all of his next of kin, had he died intestate on that day; the plaintiff having never married and his father being dead. I do not think that the consents of such persons were necessary, since, as it seems to me, the plaintiff was the only person beneficially interested in the trust within the meaning of the statute. Concededly, he was the only person interested in the income, and upon his death the corpus, if not disposed of by his will, was to go to such persons as would have taken it if he had died seised and possessed of it himself. It was to be transferred and conveyed in such manner as he might direct by his will, or, in default of such direction, "then to such persons, in such shares and proportions, respectively, as they would have been entitled to receive under the laws of New York relating to the distribution of decedents' estates and the descent of real property" in case he had died intestate, seised and possessed of the corpus as then constituted. The plaintiff, at the time the trust was created, was a resident of New York, and all the real estate conveyed was there situate. There was nothing to indicate an intention on his part of having the property distributed, in the event of his intestacy, in any different manner from that specified in the statute.

[5] The right to dispose of the corpus of the trust by his will did not make any one else beneficially interested in the trust. That was the precise question determined in Sperry v. Farmers' Loan & Trust Co., supra, where the trust deed provided that upon the death of the plaintiff the principal should be transferred and conveyed to such persons and in such manner as might be designated in plaintiff's will; no provision being made for a failure to appoint. In Hoskin v. Long Island Loan & Trust Co., supra, the trust deed provided that upon the termination of the trust the principal should be paid over to the plaintiff's executor or administrator, to be distributed according to her will "or the statutes in such case made and provided." The court held that no person other than the plaintiff was beneficially interested in the trust, under the statute. Mr. Justice Burr, whose opinion was adopted by the Court of Appeals, said:

"If the instrument, after providing for the disposition of the income during the lifetime of Mrs. Hoskin, had contained no directions as to the dis-

position of the principal of the fund after her death, this would not be debatable. In legal effect it does that, and nothing more."

In the present case the trust indenture does not provide for the delivery of the personal property to the plaintiff's executor or administrator, but this court held that, even in the absence of such direction, the creator of the trust may, nevertheless, be the only person beneficially interested. Whittemore v. Equitable Trust Co., 162 App. Div. 607, 147 N. Y. Supp. 1058. In that case the trust was of personal property, and under the terms of the trust deed, upon plaintiff's death, the trustee was "to *distribute* the principal of said trust fund then remaining undisposed of hereunder among her next of kin." It was held that the plaintiff could revoke the trust as the only person beneficially interested, and that the consent of her brother and sister, her prospective next of kin, was not necessary. Mr. Justice Laughlin, who delivered the opinion, in which the other members of the court concurred, said:

"It is quite evident, I think, that the plaintiff did not intend by this deed of trust to give those who will be her next of kin at the time of her death a present beneficial interest in the property. * * * It is true the deed of trust contains the provision that the trustee shall, upon her death *distribute* the principal of the trust fund then remaining among her next of kin; but I think no particular significance is to be attached to that provision. * * * Nor do I think any significance is to be attached to the fact that she did not direct that the trustee deliver it to her administrator. She probably had no intention of leaving debts and supposed that her property could be distributed in this manner, without other administration."

So, in the case under consideration, the obvious intention of the plaintiff was that, in the absence of any testamentary direction, the corpus of the trust should be disposed of in precisely the same way as though he had died intestate. It seems to me, therefore, he did not intend to give any one else a present beneficial interest in the property, and there is no one, other than himself, who can now claim an interest therein. The authorities cited to the contrary—Crackanthorpe v. Sickles, 156 App. Div. 753, 141 N. Y. Supp. 370, and Court v. Bankers' Trust Co., 160 N. Y. Supp. 477, are distinguishable in this respect, since in neither of them was it provided that the remainder should go to the persons who would have been entitled to take, in the event of intestacy. In the Crackanthorpe Case the direction was, in the absence of testamentary disposition, to convey to and divide the property equally among the lawful issue of the plaintiff which she might leave surviving her. At the time she attempted to revoke the trust she had three children living, all under age, and it was held the trust could not be revoked, since the children had vested remainders, subject to be opened up and let in after-born children, and subject to be divested by testamentary disposition or by death before the death of the plaintiff. Here the direction is, in effect, to transfer and pay over the principal, in default of testamentary direction, to the plaintiff's heirs and next of kin. As was pointed out in the Whittemore Case, supra:

"A living person has no next of kin; and a possible interest as an heir or one of the next of kin of a living person is not descendable, devisable, or assignable, and therefore there is no one who has even a contingent interest in the property as the next of kin of the settlor of the trust."

The fact that such next of kin might eventually take the property under the trust deed and not by intestate law does not necessitate the conclusion that there is any one, other than the plaintiff, now beneficially interested in the trust within the meaning of the statute. This was pointed out by Judge Seabury in Robinson v. New York Life Insurance & Trust Co., 75 Misc. Rep. 361, 133 N. Y. Supp. 257, cited with approval in Shindler v. Robinson, 150 App. Div. 875, 135 N. Y. Supp. 1056, and Whittemore v. Equitable Trust Co., supra. If any persons other than the plaintiff had any beneficial interest in the trust, they were his mother, brother, and sister, who would have been entitled to the corpus if he had died intestate on the day he attempted to revoke it; but they all consented in writing to its revocation, so that under any theory I think there was a valid revocation.

[6] It is also contended by the defendant that the award received by the trustee for the interest in the pier referred to should be deemed realty, and for that reason not affected by the revocation. This interest was conveyed to the trustee by the plaintiff, and was acquired by the city in a condemnation proceeding, in which title vested in February, 1914. The award, amounting, with interest, to over $11,000, was not paid to the trustee until February 23, 1916, shortly before the attempted revocation. As to this award, I am of the opinion that when it was received by the trustee in cash it constituted personal property, under the decision in Sperry v. Farmers' Loan & Trust Co., supra. Under the trust indenture the trustee was authorized to sell all or any part of the real estate and invest the proceeds in specific securities; reinvestment in real estate not being permitted without the written consent of the plaintiff. If the trustee had voluntarily sold the interest in the pier to the city, the proceeds would unquestionably have been personal property. The fact that the trustee parted with the interest by operation of law can make no difference. In the Sperry Case, where the trust property conveyed consisted almost entirely of an undivided interest in realty, which was sold under a testamentary power, the court held that the proceeds paid to the trustee were personalty. It is true the award takes the place of land, and is to be considered as realty for the purpose of determining to whom the same should be paid. If the plaintiff had revoked the trust as to the personalty before the award had actually been paid over to the trustee, then the authorities cited by the defendant might be applicable, and there would be presented a question whether the revocation could affect it; but, once the moneys were paid over to the trustee, their identity was lost, and there is no more reason for considering that sum as realty than the proceeds of any of the other real estate voluntarily sold by the trustee.

My conclusion is that judgment should be directed for the plaintiff for the relief asked, but, in accordance with the stipulation of the parties, without costs. All concur.