■ In the Matter of NEW YORK CITY SCHOOL CONSTRUCTION AUTHORITY. HEIDY BRIGUGLIO, Appellant; EMPRESS REALTY, Respondent. [733 NYS2d 86] —In a condemnation proceeding, the condemnee, Heidy Briguglio, appeals from (1) an order of the Supreme Court, Kings County (Scholnick, J.), dated February 8, 2000, which granted the motion of the respondent, Empress Realty, for summary judgment on its claim for a brokerage commission, and denied her cross motion for summary judgment dismissing the claim, and (2) a judgment of the same court, entered April 11, 2000, which is in favor of Empress Realty and against her in the principal sum of $245,250.

Ordered that the appeal from the order is dismissed; and it is further,

Ordered that the judgment is reversed, on the law, the motion is denied, the cross motion is granted, the order is vacated, and the claim for a broker's commission is dismissed; and it is further,

Ordered that the condemnee is awarded one bill of costs.

The appeal from the intermediate order must be dismissed because the right of direct appeal therefrom terminated with the entry of judgment in the proceeding (*see, Matter of Aho,* 39 NY2d 241, 248). The issues raised on appeal from the order are brought up for review and have been considered on the appeal from the judgment (*see,* CPLR 5501 [a] [1]).

By judgment dated January 8, 1998, the Supreme Court granted a petition by the New York City School Construction Authority (hereinafter the NYCSCA) to condemn certain real property in Brooklyn (hereinafter the premises) owned by the appellant, Heidy Briguglio, that was needed for the construction of a new school. In April 1998 Empress Realty (hereinafter Empress) intervened in the proceeding, seeking payment of a 15% broker's commission pursuant to a broker's agreement with Briguglio dated May 14, 1997. Empress, characterizing the agreement as an exclusive right to sell and the condemnation as the equivalent of a sale within the meaning and during the term of the agreement, argued that it was entitled to a commission even if it played no part in the condemnation proceeding. In any event, Empress argued, it was the procuring cause of the property being selected for condemnation, as it brought the premises to the attention of various local and elected officials. The Supreme Court granted summary judgment to Empress on its claim for a commission, and denied the cross motion of Briguglio for summary judgment dismissing the claim. We reverse.

In resolving the issues raised on this appeal, it need not be determined whether the subject broker's agreement is properly characterized as an exclusive right to sell (*see, U.S. No. 1 Laffey Real Estate v Hanna,* 215 AD2d 552; *Rennert Diana & Co. v Ziskind,* 191 AD2d 545). Nor need it be determined whether, in the abstract, a condemnation may be deemed a sale of property. Rather, in interpreting the subject agreement, the paramount consideration is to give effect to the intent of the parties as expressed by the language employed (*see, Mallad Constr. Corp. v County Fed. Sav. & Loan Assn.,* 32 NY2d 285; *Hickman v Saunders,* 228 AD2d 559; *Ditmars-31' St. Dev. Corp. v Punia,* 17 AD2d 357). Thus, the relevant and determinative inquiry is whether the parties' intent, as expressed by the language employed in the broker's agreement, was that the taking of the

subject premises by condemnation would trigger the right to a commission. Here, in opposition to Briguglio's prima facie showing of entitlement to judgment as a matter of law on her claim that this was not the parties' intent, Empress failed to raise a triable issue of fact that it was.

The parties' agreement speaks exclusively of the sale of the premises. Thus, the taking of the premises by condemnation was not an event, by the express terms of the agreement, that was to trigger the right to a commission (see, Shaw v Avenue D Stores, 115 NYS2d 194). Consistent with the express terms of the agreement, Briguglio and her son (who hired Empress on Briguglio's behalf) submitted sworn assertions that a condemnation was not an event contemplated by the parties as one that would trigger the right to a commission under the agreement. These sworn assertions are also consistent with Empress's acquiescence, without protest or comment, in Briguglio's request, by letter dated September 7, 1997, that Empress take no part in the condemnation proceedings or in the failed negotiations with the NYCSCA leading up to the same. This request, and Briguglio's assertion that she would deal directly with the NYCSCA, were contrary to the express terms of the broker's agreement, which required that any party who evidenced an interest in the premises to Briguglio "be informed they must deal directly with Empress." Further, significantly, although Empress asserted that it was aware of the potential condemnation of the premises prior to the execution of the parties' agreement, and that the New York City school system was its main "target" from the beginning, the agreement does not address the issue of a commission if the premises were taken by condemnation, and no effect can be given to Empress's unexpressed, subjective intent concerning that issue (see, Ditmars-31' St. Dev. Corp. v Punia, supra). Indeed, any ambiguity in the agreement must be construed against Empress, which drafted the agreement (see, Bernstein v Sosnowitz, 198 AD2d 204). Finally, in light of evidence, inter alia, that the NYCSCA had identified the subject premises as a potential site for the school as early as 1991, Empress's vague assertions that it showed the premises to certain identified and unidentified public and elected officials at unspecified times is insufficient to raise a triable issue of fact that Empress was the procuring cause of the premises being selected for condemnation (see generally, Pantigo Realty v Estate of Schrenko, 249 AD2d 525; Ackerman v Dobbs, 181 AD2d 704; Norma Reynolds Realty v Wilczewski, 160 AD2d 787). In sum, summary judgment dismissing Empress' claim for a commission should have been granted to Briguglio. Ritter, J. P., McGinity and Feuerstein, JJ., concur.

H. Miller, J., concurs in part and dissents in part and votes to dismiss the appeal from the order and to affirm the judgment, with the following memorandum, in which Friedmann, J., concurs. Although I agree with the majority that the appeal from the order must be dismissed pursuant to *Matter of Aho* (39 NY2d 241, 248), I respectfully disagree with the majority's decision to reverse the judgment. In my view, Empress Realty (hereinafter Empress) is entitled to a brokerage commission under the circumstances of this case.

The relevant facts are as follows: The parties executed a brokerage agreement on May 14, 1997. This agreement granted Empress the sole and exclusive right to sell Heidy Briguglio's property for a nine-month period for $1,100,000 "or any other price and forms to which the undersigned may consent." According to Empress, this agreement was the most recent of several brokerage agreements entered into between the parties over the course of the years, during which time Empress showed the property to various city officials. The agreement obligated Briguglio to inform any purchaser who showed an interest in the property to deal directly with Empress and to identify the prospective purchaser to Empress.

By letter dated August 5, 1997, the New York City School Construction Authority (the NYCSCA) notified Briguglio that the property had been selected as a potential site for the construction of a new school. NYCSCA advised Briguglio that it was authorized to acquire the property "by negotiated purchase or condemnation." On August 21, 1997, a representative of Empress attended and spoke at a public hearing on the proposed site selection and identified itself as the broker for the property. By letter dated September 17, 1997, Briguglio informed Empress that she had decided to negotiate with the NYCSCA directly and instructed Empress "not to contact" the NYCSCA.

In an attempt to acquire the property by voluntary sale, NYCSCA offered Briguglio $900,000 on October 7, 1997. Briguglio rejected the offer, stating that the property was worth $2,500,000. The NYCSCA increased the offer to $1.3 million on October 20, 1997, but Briguglio rejected this offer as well. In early December 1997, the NYCSCA filed a condemnation petition returnable January 8, 1998. On December 22, 1997, the NYCSCA sent Briguglio a draft contract of sale reflecting the $1.6 million sales price which the parties had allegedly agreed to a few days earlier, but Briguglio rejected it and indicated that she wanted to proceed with the condemnation. Briguglio subsequently negotiated an additional $35,000 from the NYCSCA

for giving prompt possession of the property. Based upon a stipulation of settlement entered into between the NYCSCA and Briguglio, on January 8, 1998, the Supreme Court issued an order granting NYCSCA possession of the property in exchange for $1,635,000.

The Supreme Court properly concluded that Empress was entitled to a commission based upon the brokerage agreement dated May 14, 1997. This agreement clearly and unambiguously granted Empress an exclusive right to sell the property for a nine-month period. The provision in the agreement requiring Briguglio to refer all interested parties to Empress clearly establishes that the contract was an exclusive right to sell (*see, Audrey Balog Realty Corp. v East Coast Real Estate Dev.,* 202 AD2d 529; *Hammond, Kennedy & Co. v Servinational,* 48 AD2d 394, 396-397; *Gaillard Realty Co. v Rogers Wire Works,* 215 App Div 326). Since the brokerage agreement was an exclusive right to sell, Empress was entitled to a commission on any sale that occurred within the time frame specified in the agreement, regardless of whether it participated in the sale (*see, Rennert Diana & Co. v Ziskind,* 191 AD2d 545, 546; *Hyde Realty v Yerganian,* 150 AD2d 417; *Hess v Kruse,* 131 AD2d 545, 546).

Significantly, the NYCSCA was required by statute to attempt to purchase the property by negotiation before it could institute a condemnation proceeding (*see,* Public Authorities Law § 1728 [6]). Pursuant to this statutory mandate and prior to the commencement of the condemnation proceeding, the NYCSCA made an offer of $1.3 million, $200,000 more than the listing price for the property, which Briguglio rejected. Briguglio also rejected the offer made by the NYCSCA after the condemnation proceeding was commenced but before the return date of the proceeding. But for Briguglio's rejections of these offers, both of which were substantially more than the listing price for the property, NYCSCA would have acquired the property by purchasing it.

The acquisition of property by condemnation proceedings may constitute a sale under certain circumstances (*see, Tiffany Studios v Seibert,* 178 App Div 787, *affd* 223 NY 712; *Tyler v Seiler,* 76 Misc 185). In determining whether the disposition of real property through condemnation constitutes a sale entitling a broker to commission, a three-prong test is used: (1) the seller must be able to negotiate what property should be sold, (2) the seller must be able to negotiate the time when possession should be given, and (3) the seller must be able to negotiate price (*see, Wilson v Ross Inv. Co.,* 116 Colo 249, 180 P2d 226;

*Shaw v Avenue D Stores,* 115 NYS2d 194). In this case, the NYCSCA's acquisition of property may be construed as a sale since Briguglio negotiated all three terms. Indeed, while the property was technically acquired by NYCSCA through condemnation proceedings, Briguglio was at all times a willing seller who received $500,000 more than the listing price.

Undoubtedly, it would have been preferable for Empress to have included a provision in the brokerage agreement expressly stating that it was entitled to a commission in the event of a condemnation to protect its rights (*see, Haigler v Ingle,* 119 Colo 145). Nonetheless, in my view, the absence of such a provision does not destroy Empress' entitlement to a commission, since the parties executed an exclusive right to sell agreement and the transfer of property met the criteria of a sale. Thus, I agree with the Supreme Court's determination that Empress is entitled to recover a commission as a matter of law. At a minimum, however, Empress is entitled to have a jury resolve the question of whether Briguglio forced the. NYCSCA to acquire the property through condemnation to avoid paying the commission (*see, Keyes Co. v Florida Nursing Corp.,* 340 So 2d 1254 [Fla]).

Accordingly, I would affirm the judgment.